*New-London,*
*July, 1839.*

Davis
*v.*
Kingsley.

LATHAM and another *against* LAWRENCE and others.

Where the owners of a vessel signed and delivered to the master a writing, directing him where to proceed with the vessel and how to employ her ; instructing him how to use his best exertions to obtain freight, for the benefit of all concerned ; authorizing him to represent her as a first-rate vessel, copperfastened throughout, two years old and in good order; enjoining him to use all suitable care to keep her in proper condition; to be cautious in the selection of the commission merchants he might employ ; to obtain offers to purchase her, and communicate them to the owners; to remit the earnings to them ; and for his services as master, and for victualing, manning and one half the port charges, he was to receive one half of all freights, primage or earnings of the vessel, the other half to belong to the owners, deducting the wages of one seaman; it was held, that this instrument was not a charter-party, and did not exempt the general owners of the vessel from liability for necessary supplies for the voyage, furnished on the master's order.

THIS was an action of book debt for supplies furnished to the schooner *Flora.*

The cause was tried at *New-London, January* adjourned term, 1839, before *Church,* J.

The plaintiffs claimed to have proved, that in *September,* 1835, the defendants were the registered owners, and were in fact the owners, of the schooner *Flora,* whereof *John Apple-*

man was master, then bound on a voyage from *New-York* to *New-Orleans*, or some other *Southern* port; that the plaintiffs, upon the order of the master, furnished the vessel, on the sole credit of the owners, necessary stores for the voyage, to the amount of 104 dollars, 85 cents; and that with these stores on board, she soon afterwards proceeded on her voyage. It was not claimed by the plaintiffs, that the defendants contracted personally with the plaintiffs, for the stores; or that they knew that the plaintiffs had furnished, or were about to furnish, them.

The defence was, that *Appleman* procured the stores on his own account, while he was acting under a charter-party. In support of their claim, the defendants introduced the following writing, dated *September* 1st, 1835, and signed by them and *Appleman*: "Sir: You are now master of the schooner *Flora*. You will proceed to *New-York*, as soon as may be. On your arrival, you will do your best endeavours to obtain a freight for *New-Orleans*, or some other *Southern* port. If you obtain freight, you will proceed on your voyage; and wherever you may land said freight, or finish said voyage, you will then obtain freight elsewhere; as one object is for you to do all you can as regards the freighting business; and as you are interested, as well as ourselves, we shall depend on your getting all the business that may come in your track, to make the *Winter's* work count up for the vessel. As to the vessel, you can warrant her a first-rate vessel, copper-fastened throughout, two years old, &c. For your services as master, and for victualing, manning and paying one half of the port charges, you are to receive one half of all freight, primage or earnings of said vessel; the other half to go to the owners, after deducting one man's wages, at the average of the wages paid the crew during the time you may have the vessel. The vessel is now in first-rate order; and we wish you to be very careful and keep her the same, free from bruises, &c. As fast as you shall get any amount of earnings in your hands, you will send them in a bank-check, subject to our order; and be very careful with whom you deal or employ, as commission merchants, in any place where you may go; so that they do not charge you too much commissions, &c. As we should like to sell the vessel, if we can get enough for her, you will write us, if you should get any chance to sell her, after your *Winter's* work is done,

what offer you can get; and if we conclude to, will send you *New-London* July, 1839.
a bill of sale.  To Capt. *John Appleman*."

It did not appear, that the plaintiffs had any knowledge of
this writing, or of its contents.

Latham
*v.*
Lawrence.

The defendants thereupon requested the court to charge the
jury, that by reason of this writing, and the stipulations con-
tained therein, although the defendants were the registered
and general owners of the schooner *Flora,* yet the plaintiffs
could not recover.

The court refused so to instruct the jury, but instructed
them, that if they should find, that the defendants were the
registered and general owners of the schooner *Flora ;* that
*Appleman* was master thereof, and procured the stores in
question for the voyage ; and if such stores were necessary
and proper for the voyage ; the plaintiffs were entitled to re-
cover, notwithstanding the writing exhibited by the defend-
ants.

The plaintiffs had a verdict ; and the defendants moved for
a new trial for a misdirection.

*Cleaveland,* jr., in support of the motion, contended, 1.
That when the general owners of a vessel do not sail her on
their own account, but let her to others, during the continu-
ance of the charter-party, the hirers are liable for her supplies.
They are owners *pro hac vice.*   The captain is their agent,—
not the agent of the general owners.   *James* v. *Jones* & al.
3 *Esp. Rep.* 27.   *Frazer* v. *Marsh,* 13 *East* 238.   *Hallet*
v. *Columbia Insurance Company,* 8 *Johns. Rep.* 272.   *Pit-
kin* v. *Brainard,* 5 *Conn. Rep.* 451.   *Reeve* v. *Davis* & al.
1 *Adol. & El.* 312.

2. That though the amount to be paid for the charter is
dependent on the amount earned during the charter, the prin-
ciple as to the liability of the general owners, is not altered on
that account.   *Reynolds* v. *Toppan,* 15 *Mass. Rep.* 370.
*Taggard* & al. v. *Loring,* 16 *Mass. Rep.* 336.   *Perry* v.
*Osborn,* 5 *Pick.* 422.   *Cutler* v. *Wisner,* 6 *Pick.* 335.
*Leonard* v. *Huntington,* 5 *Johns. Rep.* 298.   *Thompson*
v. *Snow* & al. 4 *Greenl.* 264.

*Isham,* contra, was stopped by the court.

New-London,
July, 1839.
————
Latham
v.
Lawrence.

HUNTINGTON, J.  It is not denied, that *prima facie*, the general owners are liable for necessary supplies furnished the ship.  It is contended, however, by the defendants, that where the vessel is under a charter to the master, who has hired and employs her on his own account, having the entire controul of her, during the continuance of the charter, he is, *pro hac vice*, the owner ; and while the vessel is so employed and subject to his controul, the general owners are not responsible : and that the rule is the same, although the sum to be paid for the use of the vessel, depends upon the amount of her earnings while so employed.    The principal cases in which these points have been raised and discussed, have been examined and commented on, by the counsel for the defendants, with much ability and ingenuity.    We have not found it necessary to review the opinions supposed to be expressed in these cases, because we think the facts in the present case are such as to preclude the application of any one of them, on which the defendants rely.    The only evidence conducing to prove a hiring by the master, is contained in the document recited in the motion ; and we concur in the opinion expressed by the judge who tried the cause, that it is wholly inoperative to defeat a recovery by the plaintiffs.    That paper is not a charter-party, either in form or substance.    It contains no stipulation or agreement for the hire of the vessel.    It does not divest the owners of the controul of her.    It gives none to the master, except in his capacity of master, and as the agent of the defendants.    There are no mutual stipulations : there is no contract of hiring and letting.    It is a mere letter of instructions from the owners to the master.    It is addressed to him in that character.  " You are now master of the schooner *Flora*," is the introductory sentence.    This is the language of the principal to the subordinate.    It then directs him where to proceed with the vessel, and how to employ her.    He is to use his best exertions to obtain freight, for the benefit of all concerned.    He is authorized to represent her as a first-rate vessel, copper-fastened throughout, two years old, and in good order.    He is enjoined to use all suitable care to keep her in proper condition ; to be cautious in the selection of the commission merchants he may employ ; to obtain offers to purchase her, and communicate them to the defendants ; to remit her earnings to them ; and for his services, as master, and for victualing, manning,

and paying one half the port charges, he is to receive one half <span></span>of all freights, primage, or earnings of the vessel; the other half to belong to the owners, deducting the wages of one seaman. This instrument is, certainly, a most extraordinary and unusual charter-party. The owners, by reason of it, have not parted with the possession and management of the vessel for any period of time. They have appointed *Appleman* master; have directed him what to do with her; and given him such other instructions as they deemed important; have retained the possession, command and navigation of her; and specified the manner in which he shall be paid for his services. There is not one prominent feature of a charter-party in the instrument. It is not a contract of affreightment; and the reasonable rule, founded on just principles of commercial policy, which subjects the general owners for necessaries furnished for the ship, is applicable.

The motion for a new trial is, therefore, denied.

In this opinion the other Judges concurred.

New trial not to be granted.